APPLICATION OF ALFRED B. VELOSO AND JOHN D. GODINHO, MEMBERS OF PENN SAVINGS & LOAN ASSOCIATION OF NEWARK; UNDER N. J. S. A. 17:12B–118 TO 125, ETC.

ALFRED B. VELOSO AND JOHN D. GODINHO, APPELLANTS, AND PENN SAVINGS & LOAN ASSOCIATION OF NEWARK, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 1966—Decided December 19, 1966.

188

Before Judges SULLIVAN, KOLOVSKY and CARTON.

*Mr. Clive S. Cummis* argued the cause for appellants (*Messrs. Schiff, Cummis and Kent,* attorneys; *Messrs. Steven S. Radin and Stuart J. Freedman* on the brief).

*Mr. Peter M. Adubato* argued the cause for respondent (*Messrs. DelNegro & Adubato and Benjamin B. Feinfeld,* attorneys).

*Mrs. Marilyn Loftus Schauer,* Deputy Attorney General, argued the cause for the State Department of Banking and Insurance (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by
SULLIVAN, S. J. A. D. This is an appeal from the decision of the Commissioner of Banking and Insurance upholding the refusal of a state savings and loan association to grant an application filed with the association by one of its members to have the association mail to its membership a proposed communication. The proposed communication, in substance, notified the membership that four persons had been nominated as candidates for directors of the association and solicited voting proxies on behalf of such candidates.

Respondent Penn Savings & Loan Association of Newark (association) is a duly incorporated state association operat-

ing under the Savings and Loan Act (1963), *N. J. S. A.*
17 :12B–1 *et seq. Inter alia,* the act provides that each director
of a state association shall be a citizen of the United States
and shall be a member of the state association; he shall have
such other qualifications and meet such eligibility require-
ments as this act and the by-laws provide; members of the
association may vote by written proxy if the by-laws so pro-
vide.

The revised by-laws of the association provide that directors
shall be elected at the annual meeting of members in each
year; no director shall be eligible for election unless he shall
have been nominated in writing by a member and the nomina-
tion filed with the secretary at least 30 days before the annual
meeting; members may vote at any meeting of the associa-
tion, either in person or by proxy; the date of the annual
meeting shall be the second Tuesday of February in each
year at 3 P. M. at a place to be designated by the board of
directors.

The instant litigation has the following background.

The 1966 annual meeting of the association was scheduled
to be held on February 8, 1966, at which time the terms of
four directors of the association, Harry C. Wuethrich, Arthur
P. Musialowicz, Charles Grimm and Frank Pachana, were due
to expire. On December 4, 1965 these four directors were
nominated to succeed themselves as the management slate
for directors. Along with the notice of the 1966 annual
meeting, which was sent to each member, was enclosed a
solicitation of proxies for the election of the management
slate.

On January 7, 1966 Rose A. Leonardis, a member of the
association, nominated in writing James P. Lordi, Anthony
Pazos, John Padavano, Jr. and John D. Godinho as candi-
dates for the four directorships and filed such nomination
with the association.

Under the Savings and Loan Act (1963), *N. J. S. A.*
17 :12B–117, the relation of a state association to its mem-
bers is considered confidential and no state association shall

disclose or be required to disclose a list of its members. *Section* 118 provides that a member desiring to communicate with other members of his association shall file an application in writing with the association stating the reasons for and the purpose of his request, which request shall be accompanied by a complete copy of the proposed communication. *Section* 121 provides that if the state association fails to grant the request within ten days, the applicant may, within an additional ten-day period, apply to the Commissioner of Banking and Insurance for an order requiring the state association to do so. *Sections* 122 through 124 establish a procedure for a hearing before the Commissioner and a decision by him. If the Commissioner finds that the application is made in good faith and that to grant the application would be in the best interests of the state association and its members, the Commissioner shall order the state association to prepare and mail the communication in whole or in part at the applicant's expense. There is no specific provision in the act relating to communications concerning candidacies and elections.

By letter dated January 17, 1966 Alfred B. Veloso, a member of the association, filed an application with the association to have a proposed communication sent to its members. The proposed communication read as follows:

"Dear Member:
As you probably know there are four vacancies on the Board of Directors of Penn Savings & Loan Association. These vacancies are to be filled at an election to be held on February 8, 1966.

Four candidates have been nominated who are well known to you, who live in the Ironbound and who are equipped by training and experience to better serve you as Directors. They are:
John D. Godinho, Esq.
148 Clifford Street, Newark, New Jersey
James P. Lordi, Esq.
268 Walnut Street, Newark, New Jersey
John Padavano, Jr.
317 Jefferson Street, Newark, New Jersey
Anthony Pazos
20 Ferry Street, Newark, New Jersey

Attached to this letter is a document which you are requested to sign and mail to me in the enclosed self-addressed stamped envelope.

It will enable you to be represented at the election which is to be held between 3 and 4 o'clock in the afternoon, a most inconvenient time for most of the Association's members. This document is an authorization for me to vote for the above mentioned four candidates.

I am confident that you realize this election presents an opportunity for you to have more effective representation on the Board of Directors. I urge you to exercise your right to vote and thus protect your interests.

Sincerely yours,
Alfred B. Veloso"

Attached to the proposed communication was a form of proxy.

The application was considered by the board of directors at its meeting on January 25, 1966 and was denied. No reason was given for the denial. The applicant was notified of the board's action by letter dated January 26. On January 27 application was made to the Commissioner of Banking and Insurance for an order requiring the association to grant the request. Upon receipt of the foregoing the Commissioner scheduled a hearing for February 15, 1966.

Since the annual meeting was set for February 8, 1966 a complaint was filed in the Superior Court, Chancery Division, and a temporary restraint obtained against the holding of the annual election until after decision by the Commissioner on the matter pending before him.

On February 7, 1966 the parties appeared before the Chancery Division judge, at which time counsel for the association argued that the court permit the annual election to be held as scheduled and, if plaintiffs prevailed before the Commissioner on their application to communicate with the membership, they could then come back before the court and ask to have the election set aside. The trial court adopted this suggestion and vacated the restraint on defendant's stipulation that they would not raise the question of mootness of plaintiffs' rights at the hearing before the Commissioner.

The election was held on February 8, 1966 as scheduled, and the management slate was elected by an overwhelming vote. The official ballot prepared by the association contained the names of the eight candidates. However, practically all of

the votes cast were by proxies which had been solicited by management.

The hearing before the Commissioner was held as scheduled on February 15, 1966. In his decision, dated May 10, 1966, the Commissioner held that he was bound by the results of the election so that there was no point to ruling on the application. He therefore dismissed it as moot.

The Commissioner also recognized that his decision might be the subject of judicial review. For that reason he proceeded as if the application were not moot and rendered a decision as to whether or not (a) the application was made in good faith and (b) to grant the application would be in the best interests of the state association and its members.

The decision states that there had been no affirmative proof of bad faith but that "some doubt must be raised relative to 'good faith' especially as to the lawyer aspirants, Godinho and Lordi, not because of the lack of any personal ability or stability but because of the fact that Godinho's membership was acquired after his name was placed in nomination; and as to Lordi, because of his failure to even make an appearance at the hearing."

The Commissioner also concluded that the sending of the proposed communication would not be in the best interest of the association and its members. He found nothing seriously wrong with the proposed letter but noted a few changes that should be made in the wording. The Commissioner stated that the character and reputation of Padavano, Pazos, Godinho and Lordi were of the highest, that two of the men, Padavano and Pazos, were outstanding businessmen highly respected in the community, and that the other two men, Godinho and Lordi, were respected members of the bar of this State.

As to the two businessmen, the Commissioner said he would have no difficulty at all in making an affirmative order as concerns their candidacies. However, as to the two attorney candidates, he reached a different conclusion.

The Commissioner found that the association had established a fine record of public service and was represented by

three attorneys who have been connected with it as directors or attorneys since its inception. He noted that, either by chance or desire, the association presently has no lawyers on the board. Because of the foregoing, the Commissioner believed that the addition of two lawyers to the board would create dissention. He therefore found that it would not be in the best interests of the association or its members to grant the application.

The Commissioner's decision that the application before him was moot because the election had already taken place is erroneous. The Superior Court has plenary jurisdiction over savings and loan association elections. See *Kanengiser v. First Savings and Loan Association of Jersey City*, 50 *N. J. Super.* 427 (*App. Div.* 1958). The court had originally restrained the holding of the annual election pending the Commissioner's decision on the application. The restraint was lifted on the basis that the Commissioner decide the merits of the application. If he ruled in favor of the applicants, they could then come back before the court and apply to have the election set aside. In short, the Superior Court retained jurisdiction of the cause, pending the Commissioner's decision on the merits.

We now take up that part of the Commissioner's ruling in which he considered the merits. In so doing, and as the Commissioner did, we must view the application as if the election had not been held.

The Commissioner did not attempt directly to disqualify the four men in question as candidates for the board of directors. Indeed, their names appeared on the ballots that were used at the election. However, realistically speaking, his ruling prevented these men from any effective candidacy since they were not permitted to notify the membership of the fact of their candidacy, nor to solicit proxies. On the other hand, the management slate used the full facilities of the association to notify the membership of its candidates and to obtain proxies on their behalf.

The association in question has more than eight thousand members. It must be recognized that most of the members do not appear in person to vote at the annual meeting, but rather exercise their right to vote by executing proxies. As heretofore noted, both the act and the by-laws provide for voting by proxy. Unless a candidate for election to the board is permitted to notify the members of his candidacy and to solicit proxies from them, his chances of being elected are remote.

Here the Commissioner interpreted the statutory language, "best interest of the State association and its members," to confer upon him the power to grant or deny to candidates for the board of directors the right to communicate the fact of their candidacy to the membership and to solicit proxies.

The Savings and Loan Act (1963) does not give the Commissioner this power. Any member of the association who has the qualifications set forth in the act and by-laws has the right to be a candidate for the office of director. It is not contended that the four persons here involved do not have the required qualifications. They have been nominated in accordance with the by-laws and therefore have a right to be on the same footing with all other candidates. The democratic process of election demands no less. It would be a futile gesture for them to be candidates for the board of directors unless they are given the same right to communicate the fact of their candidacy to the members and solicit proxies.

The provision of the act that the application to communicate with other members of the association shall be granted if the Commissioner shall find that "to grant the application would be in the best interest of the State association and its members," insofar as a communication of the fact of candidacy and solicitation of proxy is concerned, is intended to give the Commissioner control only over the form and wording of the proposed communication.

To put it directly, we hold that a duly nominated candidate for election to the board of directors of a state savings

and loan association has an unqualified right to communicate the fact of his candidacy to the members of the association through the association and to solicit their proxies.

Respondent argues that the Commissioner also found that the application was not made in good faith. We do not agree that the Commissioner so found. The opinion did mention some doubt relative to "good faith" but, as the Attorney General notes in his brief, the entire tenor of the decision indicates that the Commissioner concluded that the application was made in good faith. In any event, our consideration of the entire record leads us to conclude that the application in question was made in good faith.

As heretofore noted, the Commissioner has reviewed the form of the proposed communication and found nothing seriously wrong with it, but he did suggest a few changes in the wording thereof. We adopt his suggestions.

The Commissioner's decision denying the application in question is hereby set aside and the matter remanded to him with directions to grant the application subject to the changes in wording heretofore suggested by him, and on the condition that the applicant shall first pay to the association all of the costs and expenses of preparation and mailing the communication. Plaintiffs in the Superior Court suit can then apply to have the February 8, 1966 election set aside and a new election held. We do not retain jurisdiction for any purpose.